UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KYLE SULLIVAN and JEANNE SLOAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WENNER MEDIA LLC, a Delaware corporation,<br><br>Defendant. | Case No. 1:16-cv-00960-JTN-ESC |

**MOTION FOR ATTORNEY'S FEES,
EXPENSES AND INCENTIVE AWARDS**

1

I. **INTRODUCTION**

Plaintiffs Kyle Sullivan and Jeanne Sloan ("Plaintiffs") allege that Defendant Wenner Media LLC ("Defendant" or "Wenner") violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq.* by disclosing Plaintiffs' and other Michigan customers' personal magazine subscriber information to third parties without notice or consent. After a year of litigation and months of negotiation, the parties reached a class settlement agreement, which was granted preliminary approval by the Court on December 19, 2017.

The settlement covers a Settlement Class composed of an Indirect Subscriber Subclass and a Direct Subscriber Subclass, and establishes a $1,100,000 Settlement Fund through which class members may obtain relief. Indirect Subscriber Subclass Members may submit a claim form to receive a free six-month subscription voucher to *Rolling Stone* magazine. Direct Subscriber Subclass Members may submit a claim form to receive either a cash payment (not expected to exceed $10.00) or a free one-year subscription voucher to *Rolling Stone* magazine. In the event Direct Subscriber Subclass Members fail to submit a claim form, they will receive the aforementioned one-year subscription voucher.

Having secured this relief for the Settlement Class, Plaintiffs now file this motion for attorney's fees, expenses and incentive awards. Plaintiffs respectfully request that the Court approve attorney's fees and expenses in the amount of 27% of the Settlement Fund, or $300,000, along with incentive awards of $5,000 for both Plaintiffs. For the reasons explained more fully below, the Court should grant Plaintiffs' motion.

II. **BACKGROUND**

Plaintiff Sullivan filed this action on July 29, 2016. Dkt. No. 1. Wenner filed its first pre-motion request seeking permission to file a motion to dismiss on December 06, 2016. Dkt. No. 11. Plaintiff Sullivan responded to that request on December 13, 2016, Dkt. No. 17, and the Court

struck the request on December 18, 2016, ordering Defendant to file a corrected request within seven days, Dkt. No. 18.

Wenner filed a corrected request on December 16, 2016, Dkt. No. 19, and Plaintiff Sullivan responded on December 20, 2016, Dkt. No. 21. The Court held a pre-motion conference on January 13, 2017, Dkt. No. 23, and on January 17, 2017, ordered Plaintiff Sullivan to file an amended complaint, Dkt. No. 24.

Plaintiffs filed the amended complaint on January 26, 2017. Dkt. No. 25. Wenner filed a pre-motion request seeking permission to file a motion to dismiss on February 9, 2017, Dkt. No. 29, to which Plaintiffs responded on February 24, 2017, Dkt. No. 33. Wenner then filed a supplemental pre-motion request on April 3, 2017, Dkt. No. 36, to which Plaintiff responded on April 19, 2017, Dkt. No. 38. The Court denied Defendant's supplemental pre-motion request on April 20, 2017, Dkt. No. 39, and the parties filed a joint motion to adjourn the pre-motion conference in light of their agreement to conduct voluntary mediation, Dkt. No. 40. The next day, the Court entered an order granting the parties' motion and submitted the case to facilitative mediation. Dkt. No. 41.

The mediation was conducted by Jed D. Melnick, Esq. of JAMS in New York City, Dkt. Nos. 42-43, and the parties exchanged mediation briefs and informal information in order to prepare for and conduct the mediation. Dkt. No. 56-1 at ¶6. After a full day of mediation and multiple arms-length negotiations spanning several months, the Parties ultimately reached an agreement in principal. *Id.* at ¶7; *see also* Dkt. Nos. 44-54. As part of the mediation and settlement discussions, the parties engaged in additional post-mediation exchanges of information to fully understand the facts of the case and each parties' respective positions. Dkt. No. 56-1 at ¶¶5-7.

3

The Settlement Agreement covers the following Settlement Class Members: "All persons with Michigan street addresses who received a subscription to Rolling Stone, Men's Journal, or Us Weekly and were subscribers between January 1, 2010, and December 31, 2011," including Direct Subscriber Subclass Members[1] and an Indirect Subscriber Subclass Members.[2] Dkt. No. 56-2 at ¶1.19.

Indirect Subscriber Subclass Members may obtain a voucher or code redeemable for a six-month subscription to Rolling Stone magazine in the event they submit a timely and valid Claim Form. Dkt. No. 56-2 at ¶1.10(a). For Direct Subscriber Subclass Members, Wenner has agreed to create a Settlement Fund of $1,100,000[3] to provide subclass members relief in the form of a Cash Distribution Amount, or a one-year free subscription to Rolling Stone. *Id.* at ¶1.10(b). The Direct Subscriber Subclass Members may elect, through the submission of a timely and valid Claim Form, to obtain either the Cash Distribution Amount or the one-year free subscription. *Id.* If Direct Subscriber Subclass Members do not submit a Claims Form, they will automatically receive a free, one-year subscription to Rolling Stone magazine. *Id.*

The Settlement Agreement also provides for payment of attorney's fees, expenses and incentive awards. Defendant has agreed that Plaintiffs may receive an incentive award of up to $5,000 each ($10,000 in total) from the Settlement Fund. Dkt. No. 56-2 at ¶1.08. Defendant also has agreed the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and

---

[1] The Direct Subscriber Subclass Members are defined as "Settlement Class Members whose subscriptions were obtained directly from Wenner online or by returning a 'blow-in' subscription form from a Wenner Magazine." Dkt. No. 56-2 at ¶1.04.

[2] The Indirect Subscriber Subclass Members are defined as "Settlement Class Members whose subscriptions to a Wenner Magazine were obtained from third-party subscription agents." Dkt. No. 56-2 at ¶1.09.

[3] The costs of administering the settlement and of sending notice as set forth in the Settlement Agreement or required by the Court will be paid from the Settlement Fund. Dkt. No. 56-2 at ¶1.21.

to reimburse expenses in this Action, in an amount to be approved by the Court, but for no more than $300,000. *Id.* at ¶2.03.

On December 19, 2017, the Court granted preliminary approval of the settlement agreement and certified the Settlement Class. Dkt. No. 58. The Court ordered the dissemination of notice by January 18, 2017, and ordered Plaintiffs to file their request for attorney's fees, expenses and incentive awards the same day. *Id.* The final fairness hearing is currently scheduled for April 26, 2018. Dkt. No. 59.

### III. THE ATTORNEYS' FEES AND COST REQUEST IS REASONABLE

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h)(1). In this case, the Settlement Agreement authorizes Class Counsel to petition the Court for no more than $300,000 from (27% of) the $1,100,000 Settlement Fund. Dkt. No. 56-2 at ¶2.03.

Where, like here, attorney's fees and costs are sought from a common fund, the only requirement is that any such award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). While reasonableness "depends on the circumstances of each case," the most common methods for calculation of attorney's fees in common fund cases are the lodestar and percentage-of-the-fund methodologies. *Id.* at 516-17. Whatever approach is used, the court must "articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee," including:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

Here, the Court should adopt the percentage-of-the-fund methodology, and, for the reasons explained below, award Class Counsel attorney's fees and costs of $300,000, or 27% of the Settlement Fund.

### A. The percentage-of-the-fund methodology should be used to determine the reasonableness of Class Counsel's fee and expense request

The Sixth Circuit has recognized a trend "towards adoption of a percentage of the fund method." *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (quoting *Rawlings*, 9 F.3d at 515, and citing *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 776 (6th Cir. 2005)). The percentage-of-the-fund methodology also has a number of benefits the lodestar method does not: it "is easy to calculate;" it "establishes reasonable expectations on the part of the plaintiffs' attorneys as to their expected recovery;" and it "encourages early settlement." *Id.*; *see also In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (similar); *In re Packaged Ice Antitrust Litig.*, No. 08-mdl-1952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011). Finally, the percentage-of-the-fund approach "allows a Court to prevent inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit." *Stanley v. U.S. Steel Co.*, No. 04-cv-74654, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009).

As a result of the benefits provided by the percentage-of-the-fund methodology, district courts in four recent VRPA class settlements have chosen to utilize that methodology in determining the reasonableness of attorney fee requests. *See Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. No. 42 pp. 7-8 (E.D. Mich. Sept. 28, 2017) (awarding 35% of fund as attorney's fees); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, Dkt. No. 54, p. 13 (E.D. Mich. Sept. 29,

6

2016) (awarding 25% of fund as attorney's fees); *Kinder v. Meredith Corp.*, No. 14-cv-11284, Dkt. No. 81, p. 6 (E.D. Mich. May 18, 2016) (awarding 35% of fund as attorney's fees); *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831, Dkt. No. 68, p. 8 (E.D. Mich. Jan. 06, 2015) (awarding 30% of fund as attorney's fees).

The Court should follow the weight of authority and apply the percentage-of-the-fund approach here, and award Class Counsel 27% of the Settlement Fund for the reasons more fully explained below.

> **B.     The relevant factors demonstrate the reasonableness of Class Counsel's Fee Request**
>
> > **i.     The class will obtain valuable benefits as a result of Class Counsel's work**

The class settlement in this case covers approximately 167,300 class members. Dkt. No. 56-1 ¶8. The 109,384 Indirect Subscribers Subclass Members have the opportunity to make a claim and receive a voucher or code for a free six-month subscription. Dkt. No. 56-2 at ¶1.10(a). The remaining 57,619 Direct Subscribers Subclass Members are guaranteed to obtain relief through the $1,100,000 Settlement Fund, either in the form of cash or a free-one year subscription. *Id.* at ¶1.10(b).

As stated in the Motion for Preliminary Approval, these tangible benefits to the class members surpass other privacy class settlements where payment was made through *cy pres* rather than directly to the class. *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (granting final approval for settlement of claims with only form of monetary payment to *cy pres* fund); *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (similar); *In re Google Buzz Privacy Litig.*, No. 10-cv-672, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (similar).

Additionally, the benefits provided to the class here are similar to other VRPA settlements. *See Moeller*, No. 16-cv-11367, Dkt. No. 42 (granting final approval to class settlement where only those class members who made claims would receive pro rata portion of settlement fund); *Coulter-Owens*, No. 14-cv-12688, Doc. 54 (similar); *Kinder*, No. 14-cv-11284, Dkt. No. 81 (similar); *Halaburda*, No. 12-cv-12831, Dkt. No. 68 (similar). And the percentage of the fund requested here is lower than the percentage of the fund attorney's fees requested in all but one of the prior VRPA class settlements. *See Moeller*, No. 16-cv-11367, Dkt. No. 42 pp. 7-8 (awarding 35% of fund as attorney's fees); *Coulter-Owens*, No. 14-cv-12688, Dkt. No. 54, p. 13 (awarding 25% of fund as attorney's fees); *Kinder*, No. 14-cv-11284, Dkt. No. 81, p. 6 (awarding 35% of fund as attorney's fees); *Halaburda*, No. 12-cv-12831, Dkt. No. 68, p. 8 (awarding 30% of fund as attorney's fees).

For each of these reasons, the benefits provided to class members justify payment of 27% of the Settlement Fund to Class Counsel to cover their fees and expenses. *See Daenzer v. Wayland Ford Inc.*, No. 01-cv-133, 2003 WL 22414966, at *6 (W.D. Mich. Sept. 25, 2003) ("When attorneys are awarded fees from the common fund, they generally receive 20–30 percent of the common fund, with 25 percent serving as the benchmark."); *see also Thacker v. Chesapeake Appalachia*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts … have regularly determined that 30% fee awards are reasonable."); *In re Telectronics*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("[T]he range of reasonableness has been designated as between twenty to fifty percent of the common fund.").

    ii.    **The hourly value of Class Counsel's efforts supports their fee request**

As of the filing of this motion, Class Counsel have expended 502 hours in litigating this case and obtaining global resolution. *See* Declaration of Gary Lynch ¶6, attached as Exhibit A; Declaration of Daniel Myers ¶7, attached as Exhibit B; Declaration of Robert Wood ¶¶5-6,

attached as Exhibit C. The value of these hours equates to $261,210. *Id.* In addition to their time, Class Counsel have incurred total expenses in the amount of $17,866.89. Ex. A ¶8; Ex. B ¶9; Ex. C ¶8. Class Counsel anticipates incurring substantial additional hours throughout the final approval and settlement process. Ex. A ¶7; Ex. B ¶8; Ex. C ¶7.

The requested $300,000 fee and expense award represents a multiplier of 1.1. This multiplier is well within the range of reasonableness. *See In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (noting typical multiplier "ranges from 1.3 to 4.5"); *Manners v. Amer. Gen. Life Ins. Co.*, No. 98-cv-266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (recognizing that multipliers "have ranged from 1–4 and have reached as high as 10"). And, in any event, District Courts have complete discretion in awarding fees and expenses pursuant to a common fund, meaning a lodestar cross check is not mandatory or required. *See Gascho*, 822 F.3d at 280 ("District courts have the discretion to select the particular method of calculation."); *see, e.g.*, *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 501 (6th Cir. 2011) (finding cross-check optional). For these reasons, the hours Class Counsel expended in litigating and resolving this case justify their fee and expense request.

### iii.     This case was taken on a contingency basis

Litigating cases on a contingent basis "often justifies an increase in the award of attorney's fees." *Doe 1-2 v. Deja Vu Servs., Inc.*, No. 16-cv-10877, 2017 WL 2629101, at *11 (E.D. Mich. June 19, 2017). This results from the significant risk of undertaking the expense and time of litigating complex cases with the "very real possibility of getting nothing whatsoever." *Underwood v. Carpenters Pension Trust Fund*, No. 13-cv-14464, 2017 WL 655622, at *14 (E.D. Mich. 2017).

Here, Class Counsel took on this case on a contingent fee basis. Ex. A ¶4; Ex. B ¶4; Ex. C ¶3. For a year and one half, Class Counsel has investigated Defendant's privacy practices and

9

policies, engaged in motions practice, participated in mediation in New York, and participated in month of settlement discussions, all without any guarantee of recouping their fees and expenses. Ex. A ¶5; Ex. B ¶5; Ex. C ¶4. Significantly, Class Counsel took on this case before the Sixth Circuit ruled that individuals have standing to seek relief under the VRPA, *Coulter-Owens v. Time, Inc.*, 695 Fed. Appx. 117 (6th Cir. 2017), and despite the fact that Plaintiffs and the class's claims were potentially barred by various statutory defenses, and a class waiver provision and a one-year statute of limitations clause contained in Defendant's terms of use. Dkt. No. 56 at pp. 17-18; *see also* Dkt. Nos. 19, 21, 29, 33. As a result, this factor supports Class Counsel's fee request.

### iv. Society has an interest in awarding attorney's reasonable fees through enforcement of consumer protection and privacy statutes

"Consumer class actions … have value to society … both as deterrents to unlawful behavior … and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. "[T]o encourage these positive societal effects, class counsel must be adequately compensated." *Id.*; *see also Doe 1-2 v. Deja Vu Servs., Inc.*, No. 16-cv-10877, 2017 WL 2629101, at *11 (E.D. Mich. June 19, 2017) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").

Here, society has an interest in ensuring alleged privacy violations of Michigan residents are redressed. This lawsuit, in all likelihood, was the only way to obtain any benefit for any of the members of the class, as most of them probably did not know of Defendant's alleged violations of the VRPA. Accordingly, without the effort of Plaintiffs and Class Counsel, none of the class members would have received anything for the alleged violations of privacy engaged in by Defendant. For that reason, this factor supports Class Counsel's fee and expense request.

> **v.    The potential complexity of the litigation supports Class Counsel's fee request**

"[M]ost class actions are inherently complex[.]" *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no different. It involved several complex legal issues, including issues of contract formation, whether the class waiver and one-year statute of limitations provision included in Defendant's Terms of Use preclude suit in court or recovery at all, whether Defendant sells its magazines "at retail," whether Defendant sufficiently notified customers about its data practices, and whether Defendant discloses information for exclusive marketing purposes or for some other reason. Class counsel also spent time investigating and confirming Defendant's privacy violations, as Defendant's practice allegedly were not advertised or disclosed to the public. As such, this factor supports Class Counsel's fee and expense request.

> **vi.    The professional skill and standing of Class Counsel and Defendant's Counsel support Class Counsel's fee request**

As demonstrated in the motion for preliminary approval, Class Counsel have a wealth of experience in litigation consumer class actions, and have been involved in numerous consumer protection lawsuits throughout the country. Dkt. No. 56-1 ¶¶9-11. In addition to the experience of Class Counsel, the law firm of Richardson, Patrick, Brickman and Westbrook, LLC, also has worked on this case. Similar to Class Counsel, this firm and its attorneys have significant experience in consumer protection class actions. In short, Class Counsel and the attorneys that have worked on this case have significant professional skill and are well-respected in the legal community.

Opposing counsel, Davis Wright Tremaine LLP also are well respected and have skill in defending class suits. In fact, the firm and its attorneys on this case have successfully defended and defeated many class actions to date. In the event this case failed to settle, Defendant's counsel

would have mounted a strong defense. As such, the skill and standing of Class and opposing counsel weigh in favor of Class Counsel's fee and expense request.

### IV.     THE COURT SHOULD GRANT THE REQUESTED INCENTIVE AWARD

"Incentive awards are 'efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, No. 09-cv-1162, 2016 WL 6272094, at *2 (W.D. Mich. Mar. 1, 2016) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). "These awards are 'usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole.'" *Id.* (quoting *Hadix*, 322 F.3d at 898).

In four recent VRPA settlements in Michigan, class plaintiffs were awarded incentive awards ranging from $2,000 to $10,000. *See Moeller*, No. 16-cv-11367, Dkt. No. 42 p. 8 (E.D. Mich. Sept. 28, 2017) (awarding $5,000 incentive award to each class representative); *Coulter-Owens*, No. 14-cv-12688, Dkt. No. 54, pp. 14-15 (awarding $2,000 incentive award); *Kinder*, No. 14-cv-11284, Dkt. No. 81, p. 6 (awarding $10,000 incentive award); *Halaburda*, 12-cv-12831, Dkt. No. 68, p. 8 (awarding $5,000 incentive award).

Here, an award of $5,000 is justified and comports with the other VRPA settlements to date. Both Mr. Sullivan and Ms. Sloan spent time helping Class Counsel investigate the claims in this case, and both Plaintiffs provided review and help in drafting the complaint. Ex. B. ¶ 6. Both Plaintiffs also participated in putting together the responses to several of Defendant's pre-motion letters, and also were involved in the settlement process and the compiling of the settlement papers. *Id*. For these reasons, the $5,000 incentive awards are reasonable and Plaintiffs are justified in receipt.

Dated: January 18, 2018

Respectfully,

*/s/ Gary F. Lynch*
Gary F. Lynch
CARLSON LYNCH SWEET KILEPLA &
CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15232
glynch@carlsonlynch.com
bcarlson@carlsonlynch.com

Daniel Myers
THE LAW OFFICES OF DANIEL O.
MYERS
818 Red Drive, Suite 210
Traverse City, MI 49684
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, January 18, 2018, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF filing system, which will send notification to all counsel of record.

*/s/ Gary F. Lynch*
Gary F. Lynch