**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

KYLE SULLIVAN and JEANNE SLOAN,
individually and on behalf of all others similarly
situated,

                    Plaintiffs,

      v.

WENNER MEDIA LLC, a Delaware
corporation,

                    Defendant.

Case No. 1:16-cv-00960-JTN-ESC

**MOTION FOR AND MEMORADUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

## I.       INTRODUCTION

After successful implementation of the Court-approved notice plan, Plaintiffs Kyle Sullivan and Jeanne Sloan ("Plaintiffs") now move for final approval of the class action Settlement Agreement reached with Defendant Wenner Media LLC ("Defendant" or "Wenner").   This Settlement Agreement fully and finally resolves claims that Wenner violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. §§ 445.1711, *et seq.*, by disclosing Plaintiffs' and other Michigan customers' personal magazine subscriber information to third parties without notice or consent.  Wenner denies the material allegations in the Action and denies all liability with respect to the facts and claims alleged in the Action.

The fairness, reasonableness, and adequacy of the Settlement Agreement are apparent from its terms.  The proposed settlement covers a Settlement Class comprising an Indirect Subscriber Subclass and a Direct Subscriber Subclass and establishes a $1,100,000 settlement fund.  Indirect Subscriber Subclass Members were entitled to submit a claim form to receive a free six-month subscription voucher to *Rolling Stone* magazine.  Direct Subscriber Subclass Members were entitled to submit a claim form to receive either a cash payment (not expected to exceed $10.00) or a free one-year subscription voucher to *Rolling Stone* magazine.  Direct Subscriber Subclass Members who failed to submit a claim form will receive the aforementioned one-year subscription voucher.  This settlement structure ensured that <u>all</u> Direct Subscriber Subclass Members receive some form of relief, either cash or a free magazine subscription.  This structure differs from other VRPA class settlements, which rely on low claims rates and *pro rata* distributions to consolidate cash relief in the minority of class members who submit claim forms.

Since the Court granted preliminary approval on December 19, 2017 (Dkt. No. 58), Plaintiffs, Defendant, and the Settlement Administrator have successfully implemented the Court-approved notice plan, delivering direct notice to 98.49% of class members. Keough Dec. ¶¶ 3-6.

There have been zero objections to the Settlement, and only 23 opt-outs were received.  Lynch Dec. ¶¶ 9-11; Keough Dec. ¶¶ 9, 11.

For the reasons explained below, Plaintiffs respectfully request that this Court find the Settlement fair, reasonable, and adequate, and grant final approval.

## II.    BACKGROUND

### A.    Summary of Plaintiffs' Allegations

Defendant sells magazines to consumers throughout the United States, including to Michigan residents.  *See* Amended Complaint, Dkt. No. 25 ¶¶ 2, 12 (Filed Jan. 26, 2017) (hereinafter "Compl.").  Plaintiffs, both Michigan residents, subscribe to *Rolling Stone* magazine, which is published by Defendant.  *Id.* at ¶¶ 10-11, 34-35.  Plaintiffs alleged that, in the process of selling them their magazine subscriptions to *Rolling Stone*, Defendant collected Plaintiffs' personal reading information, including their names, addresses, and magazine subscription.  *Id.* at ¶¶ 29-30.  Plaintiffs further alleged that Defendant made Plaintiffs' information available to third parties without Plaintiffs' consent.  *Id.* at ¶¶ 26-28, 31-33, 37-39.

Plaintiffs alleged that Defendant's conduct violates the VRPA.[1]  *See* Compl. ¶¶ 51-59.  The VRPA forbids individuals "engaged in the business of selling at retail, renting, or lending books or other written materials" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer."  *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016).  The VRPA expressly provides that a subscriber's personal reading information may be disclosed "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and "[t]he person disclosing the information … informed the customer

---

[1] On July 31, 2016, after the filing of this lawsuit, several amendments to the VRPA took effect.

by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information."  M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016).  Plaintiffs alleged that this exemption from the statute's proscriptions does not apply because they did not consent to having their information disclosed, never received adequate notice of disclosure, and Defendant's disclosures were not for the exclusive purpose of marketing goods and services to its customers.  *See* Compl. ¶¶ 33, 37, 56-57.

      **B.**      **Litigation history and settlement discussions**

      Plaintiff Sullivan filed this action on July 29, 2016.  Dkt. No. 1.  Wenner filed its first pre-motion request seeking permission to file a motion to dismiss on December 06, 2016.  *See* Dkt. No. 11.  Plaintiff Sullivan responded to that request on December 13, 2016, *see* Dkt. No. 17, and the Court struck the request on December 18, 2016, ordering Defendant to file a corrected request within seven days, *see* Dkt. No. 18.

      Wenner filed a corrected request on December 16, 2016, *see* Dkt. No. 19, and Plaintiff Sullivan responded on December 20, 2016, *see* Dkt. No. 21.  The Court held a pre-motion conference on January 13, 2017, *see* Dkt. No. 23, and on January 17, 2017, ordered Plaintiff Sullivan to file an amended complaint, *see* Dkt. No. 24.

      Plaintiffs filed the amended complaint on January 26, 2017.  *See* Dkt. No. 25.  Wenner filed a pre-motion request seeking permission to file a motion to dismiss on February 9, 2017, *see* Dkt. No. 29, to which Plaintiffs responded on February 24, 2017, *see* Dkt. No. 33.  Wenner then filed a supplemental pre-motion request on April 3, 2017, see Dkt. No. 36, to which Plaintiffs responded on April 19, 2017, *see* Dkt. No. 38.  The Court denied Defendant's supplemental pre-motion request on April 20, 2017, *see* Dkt. No. 39, and the parties filed a joint motion to adjourn the pre-motion conference in light of their agreement to conduct voluntary mediation, *see* Dkt. No.

40.  The following day, the Court entered an order granting the parties' motion and submitting the case to facilitative mediation.  *See* Dkt. No. 41.

The mediation was conducted by Jed D. Melnick, Esq. of JAMS in New York City, *see* Dkt. Nos. 42-43, and the parties exchanged mediation briefs and informal information in order to prepare for and conduct the mediation.  Lynch Dec. ¶ 6.  After a full day of mediation and multiple arms-length negotiations spanning several months, the parties ultimately reached an agreement in principle.  *Id.* at ¶ 7; *see also* Dkt. Nos. 44-54.  As part of the mediation and settlement discussions, the parties engaged in additional post-mediation exchanges of information in order to fully understand the facts of the case and each parties' respective positions.  Lynch Dec. ¶¶ 5-7.

On November 17, 2017, Defendant caused to be mailed copies of certain case documents required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the Attorneys General of the United States and the State of Michigan advising them of the settlement. Payson Dec. ¶ 2. On December 19, 2017, this Court granted preliminary approval to the Settlement Agreement and authorized the parties to disseminate notice to the Class. Dkt. No. 58.  On January 18, 2018, the Settlement Administrator, JND Legal Administration, LLC ("JND"), caused the Class Notice to be mailed via first-class regular mail via the United States Postal Service ("USPS") to the 166,699 Class Members on the Class Mailing List.  Keough Dec. ¶ 5. On the same day notice was mailed, JND also established a dedicated information website which hosts copies of important case documents, answers frequently asked questions, provides administrator contact information for mail or e-mail contact, and provided an online claim submittal process. Keough Dec. ¶ 7. On January 18, 2018, Class Counsel filed its Motion for Attorney's Fees, Expenses, and Incentive Awards. Dkt. No. 60.

### III.    SETTLEMENT TERMS

#### A.    Class definition

The Settlement Class is defined as "All persons with Michigan street addresses who received a subscription to Rolling Stone, Men's Journal, or Us Weekly and were subscribers between January 1, 2010, and December 31, 2011." (Settlement Agreement at ¶1.19).   The Settlement Class includes Direct Subscriber Subclass Members and Indirect Subscriber Subclass Members.  (*Id.*).   The Direct Subscriber Subclass Members are defined as "Settlement Class Members whose subscriptions were obtained directly from Wenner online or by returning a 'blow-in' subscription form from a Wenner Magazine." (Settlement Agreement at ¶1.04).  The Indirect Subscriber Subclass Members are defined as "Settlement Class Members whose subscriptions to a Wenner Magazine were obtained from third-party subscription agents." (Settlement Agreement at ¶1.09).  Excluded from the Settlement Class are "Wenner, any affiliate, parent, or direct or indirect subsidiary, or any entity that has a controlling interest therein, or their current or former directors, officers, managers, employees, partners, advisors, counsel, and their immediate families. The Settlement Class also does not include any persons who validly request exclusion from the Settlement Class." (Settlement Agreement at ¶1.19).

#### B.    Relief to the Class

The relief available to the Settlement Class depends on whether class members are Direct or Indirect Subscriber Subclass Members.  Indirect Subscriber Subclass Members were entitled to obtain a voucher or code redeemable for a six-month subscription to *Rolling Stone* magazine in the event they submitted a timely and valid Claim Form.  (Settlement Agreement at ¶ 1.10(a)).  For Direct Subscriber Subclass Members, Wenner agreed to create a Settlement Fund of $1,100,000

to provide to subclass members relief in the form of a Cash Distribution Amount,[2] or a one-year free subscription to Rolling Stone. (Settlement Agreement at ¶1.10(b)). The Direct Subscriber Subclass Members were entitled to elect, through the submission of a timely and valid Claim Form, either the Cash Distribution Amount or the one-year free subscription. (*Id.*). If Direct Subscriber Subclass Members did not submit a Claim Form, they will automatically receive a voucher or code for a free, one-year subscription to Rolling Stone magazine. (*Id.*). For each one-year subscription chosen or automatically received by the Direct Subscriber Subclass Members, Wenner shall receive a credit equal to the Cash Distribution Amount towards the Settlement Fund. (*Id.*). After those credits are totaled against the Settlement Fund, and after the incentive awards for Plaintiffs and the attorney's fees and costs are deducted, the remaining amount in the Settlement Fund will be distributed to the Direct Subscriber Subclass Members who elected to receive cash. (*Id.*).

### C.    Release

Defendant will receive a full release for all claims that arise out of or relate in any way to Wenner's disclosure of the Settlement Class Members' personal reading information that have been or could have been brought in this case, as well as any claims arising out of the same nucleus of operative facts as any of the claims asserted in this case. (Settlement Agreement at ¶1.13).

### D.    Notice and Administration Costs

The costs of administering the settlement and of sending notice as set forth in the Agreement or required by the Court have been and will continue to be paid from the Settlement Fund. (Settlement Agreement at ¶1.21).

---

[2] The Cash Distribution Amount will be determined by a pro rata distribution of the Settlement Fund among the up to 57,619 Direct Subscriber class members, after deduction for (i) class notice and settlement administration costs, (ii) Court approved Representative Plaintiffs' attorneys' fees and costs, and (iii) Court approved Incentive Awards. (*Id.*)

### E.      Incentive award

To recognize the efforts of Plaintiffs in achieving the relief for the Settlement Class as detailed herein, and as appropriate compensation for their time and effort, Defendant has agreed that Plaintiffs may receive, subject to Court approval, an incentive award of up to $5,000 each ($10,000 in total) from the Settlement Fund.  (Settlement Agreement at ¶1.08).  Defendant has agreed not to oppose any request limited to this amount.  (Settlement Agreement at ¶2.03).

### F.      Attorneys' fees and costs

Defendant has agreed the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court, but no more than $300,000.  (Settlement Agreement at ¶2.03).  On January 18, 2018, Class Counsel filed a separate fee and expense application as directed by this Court. Dkt. No. 60.

## IV.   CERTIFYING THE PROPOSED CLASS FOR SETTLEMENT PURPOSES SATISFIES RULE 23

In connection with preliminary approval, this Court determined that the Settlement Class satisfied the requirements of Rule 23.  For the Court's benefit and to ensure continued compliance, Plaintiffs reiterate their arguments here.

Classes certified for settlement purposes, like classes certified through the litigation process, must meet the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-23 (1997).  Under Rule 23(a), the settlement class must satisfy numerosity, commonality, typicality and adequacy.  *See* Fed. R. Civ. P. 23(a)(1)-(4).   Under Rule 23(b)(3), the settlement class must satisfy predominance and superiority.  *See* Fed. R. Civ. P. 23(b)(3).  As explained below, the Settlement Class satisfies each of the requirements of Rule 23(a) and (b)(3).

### A.      Numerosity is satisfied

To satisfy numerosity, the settlement class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).

Here, the Settlement Class easily satisfies numerosity because, according to Defendant's records, there are approximately 167,300 persons who purchased a subscription either directly or indirectly from Wenner between January 1, 2010 and December 31, 2011, consisting of 109,384 Indirect Subscribers and 57,619 Direct Subscribers. *See* Dkt. No. 56, Ex. 1. The Class and each Subclass is "substantial" and clearly so numerous that joinder of all members is impracticable.

### B.      Commonality is satisfied

To satisfy commonality, there must be "questions of law or fact common to the [settlement] class." Rule 23(a)(2). "[A] common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Only a "single common question" is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, commonality is satisfied because the central legal and factual questions at issue are common to Plaintiffs and the Settlement Class Members. The central common legal questions include whether Defendant is "engaged in the business of selling at retail … books or other written materials," and whether Defendant disclosed "a record of information concerning the [Settlement Class Members'] purchase[s]" that "identifies the identity of the [Settlement Class Members]." *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D. Mich. 2015). The central common factual questions include whether Defendant, as a matter of policy, disclosed the personal subscriber

9

information of Plaintiffs and the Settlement Class Members.  *Id.*  Several potential affirmative defenses also raise common factual issues.  For example, the VRPA exempts disclosures that were made for the exclusive purpose of marketing goods and services directly to consumers, and the defendant provided written notice to opt-out of the disclosure.  *See* M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016).  Whether Defendant's disclosures were for exclusive marketing purposes, and if they were, whether Defendant gave the Settlement Class Members notice are common to the Settlement Class Members.  *Coulter-Owens*, 308 F.R.D. at 533.  For each of these reasons, commonality is satisfied.

### C.    Typicality is satisfied

To satisfy typicality, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the [settlement] class." Rule 23(a)(3).  "[T]he representative[s'] interests [must] be aligned with those of the represented group, and in pursing [their] own claims, the named plaintiff[s must] also advance the interests of the class members." *Young*, 693 F.3d at 542.

Typicality is satisfied here because Plaintiffs are alleging Defendant discloses the personal subscriber information of all subscribers as a matter of policy.  Since the subscriber information of the Settlement Class Members was allegedly disclosed in the same way as Plaintiffs' subscriber information, the pursuit of Plaintiffs' claims will advance the interests of the Settlement Class Members.  Similarly, and as explained in the commonality section, Plaintiffs are alleging Defendant's disclosures were not made for the exclusive purpose of marketing goods and services directly to Settlement Class Members, and that sufficient notice was not provided.  Plaintiffs' pursuit of these issues is directly aligned with the interests of the Settlement Class Members.  As a result, typicality is satisfied.  *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35.

### D.    Adequacy is satisfied

To satisfy adequacy, "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Two criteria are relevant to this inquiry: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543.  Courts also must "review[]the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.*

Here, Plaintiffs and each Settlement Class Member are Michigan subscribers of magazines published by Wenner, and each allegedly had their personal subscriber information disclosed without their consent.  Plaintiffs and each Settlement Class Member have identical interests in recovering for the allegedly unlawful disclosure of their information and ensuring such disclosure does not continue.  Accordingly, Plaintiffs' interests are not antagonistic to the Settlement Class and Plaintiffs can adequately represent their interests.

Similarly, Class Counsel have a wealth of experience in litigating consumer class actions. *See* Dkt. No. 56, Ex. 1.  Counsel have been involved in numerous consumer protection lawsuits throughout the country, and have the resources and skill to litigate these types of cases.  *Id.* Additionally, Class Counsel have litigated this case thoughtfully and engaged in months-long negotiations to achieve the result currently before the Court.

For all of these reasons, Plaintiffs and Class Counsel have demonstrated their commitment to advocating for the interests of the Settlement Class and their interests do not diverge from the Settlement Class Members.  As a result, adequacy is satisfied.

### E.      Predominance is satisfied

To satisfy predominance, "the questions of law or fact common to the [settlement] class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 136 S. Ct. at 1045.  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

Here, the common questions of law and fact identified in the commonality section predominate over any questions affecting only individual class members.  Again, the central factual inquiry is whether the personal subscriber information of the Settlement Class Members was disclosed, whether those disclosures were made for the exclusive purpose of marketing to consumers, and whether the Settlement Class Members received sufficient notice regarding the disclosures.  These common issues drown-out any individualized inquiries.  Likewise, the common legal questions at issue, whether Defendant sells magazines or magazine subscriptions "at retail" and whether Defendant's disclosures provide notice under the VRPA, predominate over any individual legal issues specific to any individual Settlement Class Member.  Since the central factual and legal questions are susceptible to generalized class-wide proof, and since Defendant is allegedly engaged in a common course of conduct with respect to the Settlement Class as a whole, predominance is satisfied.  *Coutler-Owens*, 308 F.R.D. at 536.

### F.      Superiority is satisfied

To satisfy superiority, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy," which includes consideration of "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

As stated above, the central questions at issue in this litigation are common to Plaintiffs and all Settlement Class Members. Furthermore, the Settlement Class Members may not even be aware of the injuries at issue here, and almost certainly would find the cost of individual litigation much too high to justify individual litigation. For all of these reasons, class settlement is superior to any available alternatives, and superiority is satisfied.

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

Review and approval of class settlements involves a two-step process: (1) preliminary approval of the proposed settlement and the proposed class and the method and form of class notice; and (2) final approval of the settlement following notice and hearing to determine fairness. *Franke v. Fin. Lead Servs.*, No. 12-cv-1374, 2014 WL 7010790, at *3 (W.D. Mich. Dec. 10, 2014)

(citing Manual for Complex Litig. § 30.41, at 236-37 (3rd ed. 1995); Manual for Complex Litig., § 21.632, at 320 (4th ed. 2004) (similar).

This Court previously granted preliminary approval and now must decide whether to grant final approval.  At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).  The substantive requirements relevant for final approval in the Sixth Circuit include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007).  In considering these factors, "it is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate and reasonable." Simpson v. Citizens Bank, 2013 WL 12122431, at *4 (E.D. Mich. Sept. 5, 2013).

For the reasons explained below, an examination of the final fairness factors demonstrates the proposed settlement should be given final approval.

### A.    The risk of fraud or collusion

Courts "find an absence of collusion when settlement negotiations are conducted by a third-party mediator." Newberg on Class Actions § 13.14 (5th ed. 2017).  The Settlement in this case arose out of arms-length negotiations that spanned several months.  Most importantly, the settlement is the product of an initial day-long mediation before Jed D. Melnick, Esq., several continuing facilitative discussions, and months of back and forth negotiations.  Lynch Dec. ¶¶ 5-7.  Through this process, the parties exchanged documents and relevant information in order to properly evaluate their positions and settlement negotiations.  *Id.*  As a result, the parties have

sufficient information to make reasoned decisions regarding settlement, and there are no grounds on which procedural unfairness can rest. *See, e.g.*, *Hillson v. Kelly Services Inc.*, No. 15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017). As such, this factor supports final approval.

### B. The complexity, expense and likely duration of the litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphia Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Generally speaking, "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated with them." *In re Delphia Corp.*, 248 F.R.D. at 497.

Had the parties not reached the proposed settlement, the Court would have had to rule on Defendant's anticipated motion to dismiss, the parties would have had to engage in formal discovery (as well as third party discovery), depositions, and contested motions for summary judgment and class certification. This complex process would be costly and time-consuming and would create risks that the Settlement Class would not be certified or would recover nothing. Defendant assuredly would have continued contesting the merits of this case vigorously and opposed certification of any class. Furthermore, even if a class was certified, and liability was established, Defendant would most likely appeal any adverse judgment, and in light of the potential for statutory damages on a class-wide basis, attempt to argue for a reduction in damages based on due process and other grounds.

The Settlement Agreement avoids this complexity, expense, and time and affords the Settlement Class Members prompt resolution of their claims. This resolution is accomplished years earlier and at a much lower cost than any resolution achieved through protracted litigation. As a result, this factor weights in favor of final approval.

### C. The amount of discovery engaged in by the parties

Formal discovery had not yet begun in this action. Nevertheless, the parties engaged in the informal exchange of information pursuant to mediation and ongoing settlement negotiations to ensure they understood the facts of the case and the parties' legal positions. Lynch Dec. ¶¶ 5-7. "That the parties conducted their investigation through informal discovery, or based on information assembled in a related case, is not unusual or problematic, so long as they and the court have adequate information in order to evaluate the parties' relative positions." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 538, 598 (E.D. Mich. 2006) (collecting cases). As such, because the parties exchanged sufficient information to apprise themselves and the Court of the propriety of the Settlement Agreement, this factors weighs in favor of final approval.

### D. The likelihood of success on the merits

Courts "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 925 F.3d 299, 309 (6th Cir. 2016). To this end, courts must "specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Id.*

While Plaintiffs are confident in the merits of this case, the likelihood of success on the merits faces several obstacles. Perhaps most important is the specter of Plaintiffs and each

Settlement Class Member being forced to pursue their claims individually.  Wenner's Terms of Use on its website provide that subscribers to its magazine agree to bring claims only on an individual basis, and not as part of a class.  While Plaintiffs believe this contract is unenforceable and does not cover their claims, if enforced, Plaintiffs or any Settlement Class Member would likely not pursue their claims because the cost of individual litigation outweighs the damages Plaintiffs and the Settlement Class Members may recover.  Additionally, if the Terms of Use are enforceable, the proscribed one-year limitation period may bar Plaintiffs' and the Settlement Class Members' claims altogether.

Another obstacle to recovery is that the Settlement Class Members may not be able to hold Wenner liable in the event the Court finds the Settlement Class Members' magazine subscriptions were not purchased "at retail."  *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016).  In *Coulter-Owens v. Time, Inc.*, 695 Fed. Appx. 117, 121-24 (6th Cir. June 26, 2017), the Sixth Circuit affirmed the dismissal of an action under the VRPA where the defendant's magazine subscriptions were not sold directly to the consumer by the publisher and therefore were not sold "at retail."  Moreover, to the extent the Court might find that Defendant's disclosures of Plaintiffs' and the Settlement Class Members' personal reading information was for the exclusive purpose of marketing, Plaintiffs' and the Settlement Class Members' claims would fail.  *See* M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016).  And even if Plaintiffs prevail on these issues, Defendant is likely to appeal any adverse judgment.  Finally, in light of the large statutory damages potentially available to the Settlement Class, Defendant is sure to argue for a reduction of damages on due process grounds.  *See, e.g.*, *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all

reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Against this uncertainty of success at summary judgment, at trial or on appeal, the benefits provided to the Settlement Class are fair and reasonable. Each Indirect Subscriber Subclass Member, who would be at risk of a decision holding their claims fall within the "at retail" exception under current Sixth Circuit law, was entitled to file a claim to receive a free, six-month subscription to *Rolling Stone*. (Settlement Agreement at ¶1.10(a)). Each Direct Subscriber Subclass Member, who is less likely to fall under the "at retail" exception, but may be subject to the other defenses addressed above, was entitled to file a claim and select either a Cash Distribution Amount or a free one year subscription. (Settlement Agreement at ¶1.10(b)). And even if a Direct Subscriber Subclass Member did nothing, they still receive a voucher or code for a free one-year subscription to *Rolling Stone* magazine. (*Id.*).

This relief is similar to, if not better than, other VRPA settlements granted final approval. *See, e.g.*, *Halaburda v. Bauer Publishing Co., LP*, No. 12-cv-12831, Dkt. No. 68 (E.D. Mich. January 8, 2015) (granting final approval to class settlement where only those class members who made claims would receive pro rata portion of settlement fund); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, Doc. 54 (E.D. Mich. Sept. 29, 2016) (similar); *Kinder v. Meredith Corporation*, No. 14-cv-11284, Dkt. No. 81 (E.D. Mich. May 18, 2016) (similar); *Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. No. 42 (E.D. Mich. Sept. 28, 2017) (similar). Moreover, it surpasses other privacy class settlements where payment was made through *cy pres* rather than directly to the class. *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (granting final approval for settlement of claims with only form of monetary payment to *cy pres* fund); *In re Netflix Privacy*

*Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (similar); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (similar).

Because Plaintiffs and the Settlement Class face significant risks at summary judgment, at trial and on appeal, the relief provided, when weighed against those risks, is clearly reasonable. As such, the likelihood of success factor weighs in favor of granting final approval.

### E.      The opinions of class counsel and class representative

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597.  Here, proposed Class Counsel and Defendant's counsel are reputable and experienced in complex class action litigation and have adequately assessed the strengths of their claims and positions.  As such, this factor weighs in favor of final approval.

### F.      The reaction of absent class members

This factor weighs in favor of approval where the majority of class members have elected to remain in the settlement class without objecting. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).  The deadline for objecting or opting out has passed, and the overwhelming majority of class members have elected to stay in the class and not object.  In fact, there has not been a single objection to the Settlement Agreement, and only 23 class members have requested exclusion out of a total class exceeding 165,000. Lynch Dec. ¶¶9-11.  Given this favorable reaction, this factor weighs in favor of final approval.

### G.      The public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 532.  Here, settlement will prevent prolonged

litigation and conserve judicial resources, both at the district and appellate court levels.  Settlement also will further the aims of the VRPA by ensuring Defendant's customers are appraised and given notice of their rights to opt-out of any marketing disclosures prior to becoming a subscriber to any of Defendant's magazines.  As a result, this factor favors final approval.

## VI.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS

The notice to the settlement class must comport with due process and Rule 23. *See Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) ("Before ratifying a proposed settlement agreement, a district court also must direct notice in a reasonable manner to all class members who would be bound by the settlement."); Fed. R. Civ. P. 23(e)(1).  "The notice should be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Intl. Union*, 497 F.3d at 629.  Moreover, the notice must clearly state essential information regarding the settlement, including the nature of the action, the class definition, terms of the settlement, and class members' options. Fed. R. Civ. P. 23(c)(2)(B).

Due process does not, however, require that every class member receive notice. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).  According to the Federal Judicial Center, a notice plan that reaches 70-95% of the class is considered reasonable. Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).

Here, the notice plan approved by this Court consisted of multiple parts.  First, the Settlement Administrator sent notice directly to each Settlement Class Member by U.S. Mail, containing an internet address where a claim form and other settlement information was posted. Keough Dec. ¶ 5.  The Settlement Administrator succeeded in delivering direct notice to over 98% of the Settlement Class Members. Keough Dec. ¶¶ 5-6. Second, the Settlement Administrator

20

created and maintained the dedicated website that provided notice of the Settlement Agreement, important deadlines, access to Court documents, and the ability to file claim forms online. Keough Dec. ¶ 7. Finally, notice of the Settlement Agreement was provided to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Payson Dec. ¶ 2.

The Settlement Administrator succeeded in delivering direct notice to over 98% of the Settlement Class. Keough Dec. ¶¶ 5-6. Accordingly, the notice plan provided comprehensive settlement information on an impressively broad reach to the Settlement Class, satisfying due process and Rule 23.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (1) granting final approval to the Settlement Agreement and (2) awarding such other relief as the Court deems reasonable and just.

Dated: March 26, 2018

*/s/ Gary F. Lynch*
Gary F. Lynch
Carlson Lynch Sweet Kilpela &
Carpenter, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, March 26, 2018, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF filing system, which will send notification to all counsel of record.

*/s/ Gary F. Lynch*
Gary F. Lynch